BLANCO, PETITIONER AND APPELLANT, v. PEOPLE, RESPONDENT
AND APPELLEE.

Appeal from the District Court of San Juan, Section 2, in
Habeas Corpus Proceedings.

No. 1193.—Decided July 26, 1917.

HABEAS CORPUS—EMBEZZLEMENT—CONVERSION—JURISDICTION.—Conversion, as a
necessary element of the offense of embezzlement, is the fraudulent appro-
priation of another's property to one's own use, and the jurisdiction of
the crime, in the absence of statute, is the State in which the property
was converted although it may be received in another State.

ID.—ID.—CRIMINAL INTENT—EVIDENCE.—The intent to embezzle may be manifested by the practice of any form of deceit, or running away with the money, or expending it for one's own use contrary to directions, or otherwise diverting the course of the money to make it one's own, and such intent may be made to appear from circumstantial·as well as from direct evidence.

The facts are stated in the opinion..

*Mr. Eugenio Benítez Castaño* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appeal from a judgment of the district court denying a petition for writ of habeas corpus, alleging want of jurisdiction and want of probable cause sufficient to sustain an information for embezzlement.

On the hearing below the *fiscal* produced the sworn complaint of Josefina Dagniño, the pertinent portion of which reads as follows:

"That she knew Humberto Blanco Fombona in Venezuela, with whom she had had a love affair and whom she again saw in Porto Rico some months ago. On account of this, these relations were renewed and in consequence thereof, she reposed in him all her confidence. That he gave her to understand that in Santo Domingo there was a great opportunity for making money, buying a large tract of land at a low price. By reason of this, and believing in good faith in the transaction, she borrowed from Filomena García the sum of $1,300 at interest, signing a document before Notary Damián Monserrat. This occurred in the latter part of December. Early in January, he being in Santo Domingo, she left for that island for the purpose of negotiating the purchase of land to the amount of $1,000; that she and her friend Filomena García arrived in Santo Domingo and there passed more than 20 days without concluding the business on account of a defect in the titles, according to the accused, and without being shown the lands, under pretext that, as they were ladies and the lands were distant, it would be very difficult and disagreeable to visit them; that yielding to the suggestions of the accused she delivered to him the sum of $1,000. that she had deposited in the branch of the Royal Bank of Canada in Santo Domingo; that not being able to carry out the deal on account of the title-papers, complainant with her friend returned to Porto

Rico, he remaining in Santo Domingo; that in 10 or 12 days—that is, some time in the first part of February—he arrived; that he satisfied her, telling her that his brother had remained in charge of the negotiation for the land in Santo Domingo; that he had brought the money in a check so as not to lose it, but he did not return it, causing her to believe always in the consummation of the matter; that on the 21st of March, 1917, after having passed the previous evening with complainant she learned that he had embarked; she went to the steamer to see him; she met him and there he told her not to worry; that he had written her and in his letter she would find a full explanation of everything and in fact she received a letter in which he said that he would retain the money for fear that she might follow him and spend it, offering to pay interest.''

This is corroborated in part by the statement of Filomena García and by the letter mentioned by Josefina, which reads as follows:

"SAN JUAN, *March 21, 1917.*

''FRIEND JOSEFINA:

''When these lines reach you I will be on my way north. My trip will not surprise you because I have talked so much about it. Your loving conduct toward me during my illness has pledged my gratitude to my friend. The bonds of friendship, of a friendship frank and without interest as ours must be, have grown stronger during those days when my health was badly broken and I was far from family ties.

''I being absent from Santo Domingo, I do not recommend the negotiation for the lands because there are a great number of perils owing to the titles, which, although not numerous, leave much to be desired. During two months I have worked in order that these titles might be arranged in conformity to the laws; but I have not succeeded and in such circumstances I cannot let you embark upon this business which later no doubt would give you a headache. I return you, then, in a check all your money; the expenses caused by the notary and other things I will lose with great pleasure, in satisfaction of having prevented you from getting into a bad business.

''From New York I will write and tell you how the Yankees treat me.

''Regards to Filomena and accept the protestation of friendship

from one who again is grateful to you for all the evidences of love and esteem.

"HUMBERTO.

"P. S.—At the moment of putting this in the post office, think- ing of your adventurous spirit and that my voyage might arouse a feeling of envy and that it might occur to you to imitate me, which would be nothing else than madness; for this reason it seems to me wiser not to send you the check and for me to keep the money, paying you, of course, interest on this sum. It may be that this procedure is tyrannical, but I act in the name of wisdom and of those same sentiments of friendship, love and esteem that I profess for you.

"H."

There is also another letter, which we need not discuss, and other testimony tending to show a purpose on the part of the accused to proceed from San Juan to New York and thence to London.

We think the foregoing enough to show that, if the offense was committed at all, it was committed in Porto Rico; and we think the evidence produced by the *fiscal* sufficient to warrant the filing of the information.

"The jurisdiction of the crime of embezzlement, in the absence of statute, is the State in which the money or property was converted, although it may have been received in another State. 12 Cyc. 210.

"Conversion, as a necessary element of the offense of embezzlement, is the fraudulent appropriation of another's property to one's own use * * *

"To appropriate to one's own use does not necessarily mean to one's personal advantage. Every attempt by one person to dispose of the goods of another without right as if they were his own is a conversion to its own use. * * * It is not necessary for the State to show what becomes of money after it is embezzled.

* . * * * * * *

"In the absence of statutory requirements to that effect the owner of property need not as a rule make a demand for its return. * * *.

* * * * * * *

"In the case of embezzlement, as in other crimes, a criminal in-

tent is necessary. The defendant must have acted with felonious intent and made an intentionally wrong disposal of the property indicating a design to cheat and deceive the owner.

*          *          *          *          *          *          *

"The intent to embezzle may be manifested by various acts, such as making false entries, denial of receipts of money, not accounting when it should be done, rendering false accounts, or practicing any form of deceit, or running away with the money, or actually expending the money for defendant's own uses contrary to his directions, or otherwise diverting the course of the money to make it his own. Furthermore, intent may be made to appear from circumstantial as well as from direct evidence." 9 R. C. L. pp. 1275 *et seq.,* §§ 16, 18, 19 and 20.

The argument of appellant is addressed principally to the alleged deficiency of the evidence as to criminal intent; but the oral representations of the accused as to the status of the proposed business deal in Santo Domingo as compared with his subsequent statement of the situation as outlined in his letter, the concealment of his intended voyage, his evasive statements at the moment of sailing, his intimation to persons other than the prosecutrix of a probable continuation of his journey from New York to London, suggestive at least of a rather prolonged absence, in fact all the circumstances surrounding his departure, although not wholly incompatible perhaps with an honest purpose and open to explanation, yet, while unexplained, sufficiently indicate the *mens . rea.*

"The intent or intention is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots, nor lunatics nor affected with insanity. A malicious and guilty intention is presumed from the manner and deliberation with which an unlawful act is intended or committed for the purpose of injuring another." Sec. 12, Penal Code.

The accused is not now on trial and of course we express no opinion on the facts beyond holding, as we do, that the probable cause, existence of which is denied by petitioner,

sufficiently appears from the documentary evidence adduced by the *fiscal*.

The judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.